**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLANIA**

| | | |
|---|---|---|
| **CHRISTOPHER WALLACE** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No.** |
| | : | |
| v. | : | |
| | : | |
| **RICH FITZGERALD, County Executive;** | : | **ELECTRONICALLY FILED** |
| **ALLEGHENY COUNTY; ORLANDO** | : | |
| **HARPER, Warden of Allegheny County Jail;** | : | |
| **CORIZON HEALTH, INC.; DOCTOR** | : | |
| **ABIMBOLA TALABI; NURSE RYAN** | : | **JURY TRIAL DEMANDED** |
| **HEITZENRATER; NURSE MICHELLE** | : | |
| **DRANKO; NURSE LOGAN BERGER;** | : | |
| **NURSE JULIANN RAGER; SOCIAL** | | |
| **WORKER JANE DOE** | | |
| | | |
| **Defendants.** | | |

## Complaint

Plaintiff Christopher Wallace, by and through his undersigned counsel, file the following Complaint.

## Jurisdiction and Venue

1.      This case is brought pursuant to 42 U.S.C.§ 1983, the Eighth and Fourteenth Amendments to the United States Constitution, seeking monetary relief.

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4). The Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. Section 1367(a) to hear and adjudicate state law claims.

3.      This Court is the appropriate venue pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

**Parties**

4.      Plaintiff Christopher Wallace was an inmate in the custody of the Allegheny County Jail (ACJ) during the events giving rise to this complaint. He is currently not incarcerated and resides in Pittsburgh, Pennsylvania.

5.      Defendant Allegheny County is a county government organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 436 Grant Street, Pittsburgh Pennsylvania 15219. Allegheny County is in possession and control of the Allegheny County Jail, located at 950 Second Avenue, Pittsburgh, Pennsylvania 15219.

6.      Corizon Health, Inc., is a corporation with a principle place of business located at 105 Westpark Drive, Brentwood, Tennessee 37027 which operates in various capacities throughout the Commonwealth of Pennsylvania. Corizon was the medical services provider at ACJ during all relevant times herein.

7.      Orlando Harper is the warden at the Allegheny County Jail with his principle place of business being 950 Second Avenue, Pittsburgh, Pennsylvania. Defendant Harper is sued in this action in his individual capacity.

8.      Defendant Rich Fitzgerald is the County Executive for Allegheny County. His principal place of business is at 436 Grant Street, Pittsburgh, PA 15219. He is sued in his individual capacity.

9.      Doctor Abimbola Talabi was employed as a Doctor for Corizon Health, Inc. at the Allegheny County Jail at all times relevant herein, with her principal place of business at the being 950 Second Avenue, Pittsburgh, Pennsylvania.  Defendant Dr. Talabi is sued in her individual capacity.

10.     Nurse Ryan Heitzenrater was employed by Corizon Health, Inc. at the Allegheny County Jail at all times relevant herein, with his principal place of business at 950 Second Avenue, Pittsburgh, Pennsylvania. Defendant Heitzenrater is sued in his individual capacity.

11.     Nurse Logan Berger was employed by Corizon Health, Inc. at Allegheny County Jail at all times relevant herein, with his principal place of business at 950 Second Avenue, Pittsburgh, Pennsylvania. Defendant Berger is sued in his individual capacity.

12.     Nurse Michelle Dranko was employed by Corizon Health, Inc. at Allegheny County Jail at all times relevant herein, with her principal place of business at 950 Second Avenue, Pittsburgh, Pennsylvania. Defendant Dranko is sued in her individual capacity.

13.     Nurse Juliann Rager was employed by Corizon Health, Inc. at Allegheny County Jail at all times relevant herein, with her principal place of business at 950 Second Avenue, Pittsburgh, Pennsylvania. Defendant Rager is sued in her individual capacity.

14.     Social Worker Jane Doe was employed by Corizon Health, Inc. and/or Allegheny County at all times relevant herein, with her principal place of business at 950 Second Avenue, Pittsburgh, Pennsylvania. Defendant Jane Doe is sued in her individual capacity.

## Statement of Facts

15.     Christopher Wallace was born in Pittsburgh, Pennsylvania on July 12, 1986. He was 28-years-old at the time of the events giving rise to this lawsuit.

16.     On October 31, 2013, Mr. Wallace was the victim of a shooting. He was struck with 14 bullets, tearing through his abdomen and chest.

17.     Mr. Wallace was taken to UPMC Presbyterian Hospital in critical condition for intensive, life-saving treatment. He survived, but had been severely injured.

18.     One of the bullets severed his esophagus from his stomach, making it impossible for him to ingest food in the normal way through eating. As a consequence, Mr. Wallace had a food portal surgically implanted on the left side of his chest.

19.     This portal enabled Mr. Wallace to ingest food via the insertion of feeding tubes containing the nutritional content he could no longer obtain by eating. Without his feeding tubes Mr. Wallace would suffer malnutrition, starvation, and eventual death.

*Arrest, Intake at Allegheny County Jail, and Initial Hospitalization*

20.     After the October 31, 2013 shooting, Mr. Wallace was frequently in and out of the hospital for medical care.

21.     In late 2014 and early 2015, Mr. Wallace was having difficulty obtaining his feeding tubes. His Medicaid was temporarily suspended when he missed a renewal appointment due to his being hospitalized.

22.     On account of the difficulty obtaining his feeding tubes and his inability to nourish himself any other way, Mr. Wallace's health began deteriorating.

23.     On February 12, 2015, Mr. Wallace was arrested and taken to the Allegheny County Jail (ACJ).

24.     Intake staff at ACJ arranged for him to be taken to the University of Pittsburgh Medical Center (UPMC) Mercy hospital on account of his visibly poor health, which was the result of his inability to obtain feeding tubes.

25.     At UPMC Mercy he was diagnosed with, among other things, severe malnutrition, primary cardiomyopathy disease, bradycardia, cachexia, dehydration, acute kidney failure, anemia, cardiac dysrhythmias, and deep venous thrombosis.

26.     Although Mr. Wallace is 6'4" tall, at the time of his February 12, 2015 admission to UPMC Mercy he weighed a shockingly low 77 pounds. Mr. Wallace was described in medical records as "malnourished, emaciated, underweight."

27.     Treating physicians and medical staff at UPMC Mercy provided Mr. Wallace with his desperately needed feeding tubes, and provided diagnostic care and other treatment that aided in an improvement in his condition.

28.     Mr. Wallace was discharged from UPMC Mercy on February 16, 2015. Staff from UPMC Mercy spoke with a case manager and Social Worker Jane Doe from ACJ who assured UPMC Mercy that ACJ would be able to provide the necessary tube feedings for Mr. Wallace.

29.     Mr. Wallace was prescribed five (5) daily tube feedings by UPMC Mercy. These medically necessary feedings were clearly, explicitly, and unambiguously prescribed in Mr. Wallace's medical records, including the discharge records

30.     ACJ and Corizon received extensive notice and diagnostic information from the hospital pertaining to Mr. Wallace's health requirements immediately upon his reception at ACJ on February 12, 2015 on account of his hospitalization at UPMC Mercy.

*Return to ACJ, Failure to Follow Medical Orders, Starvation, and Emergency Hospitalization*

*(February 16, 2015 – March 2, 2015)*

31.     Despite the clear medical instructions as to Mr. Wallace's health conditions and prescriptions, especially his need for five daily tube feedings, ACJ medical staff failed to follow the instructions provided by UPMC Mercy and acted with deliberate indifference to the serious medical needs of Mr. Wallace.

32.     Upon return to ACJ from UPMC Mercy, Mr. Wallace was held in the jail infirmary.

33.     From February 16, 2015 to March 2, 2015, Mr. Wallace was severely malnourished and starved by the staff at ACJ who at all times relevant herein acted with deliberate indifference.

34.     During this two-week period ACJ provided Mr. Wallace less than half of the necessary tube feedings each day.

35.     On some days Mr. Wallace was fed only once instead of the medically prescribed five feedings. On other days he was not fed at all.

36.     There are no records that Mr. Wallace was provided any tube feedings during this period as the staff at ACJ failed to keep medical records or follow standard medical procedures.

37.     Dr. Abimbola Talabi was the medical director of Allegheny County Jail at this time. She was aware of Mr. Wallace and his medical needs, but she failed to ensure that Mr. Wallace was provided his medically prescribed feedings despite knowledge that inadequate feeding caused serious risk and harm to Mr. Wallace.

38.     Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager all were aware of Mr. Wallace's serious medical need for tube feedings, but allowed him to starve and suffer through their deliberate indifference.

39.     Mr. Wallace complained to these nurses about his need for tube feedings. His complaints were ignored and no measures were taken to ensure that he was provided with his medically prescribed tube feedings.

40.     Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager, as trained nursing staff, were all aware of the risks of dehydration, malnourishment, starvation, and related health problems up to and including death that will result when a person's nutritional intake is severely diminished.

41.     Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager, as trained nursing staff, were all aware that a patient faces grave and imminent health risks, including risks of permanent damage and/or death, when that patient receives less than half of his daily medically prescribed nutritional intake.

42.     Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager, as trained nursing staff, were all aware that Mr. Wallace was not able to ingest food due to the severing of his esophagus.

43.     Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager, as trained nursing staff, were all aware that Mr. Wallace did not have access to his tube feedings and relied on them and other medical staff to provide the tube feedings.

44.     Dr. Talabi was made aware that staff were not providing Mr. Wallace with his medically prescribed feedings, yet she took no measures to intervene to ensure that Mr. Wallace was adequately fed.

45.     Even laypersons without medical training recognize that the standard of care provided to Mr. Wallace and the failure of staff at ACJ to provide him with his basic nutritional requirements could result in severe health problems, risk of permanent injury or death.

46.     Social Worker Jane Doe was on notice that Mr. Wallace was in need of medical care and was aware that Mr. Wallace could not ingest food and Mr. Wallace did not have access to his tube feedings and relied on medical staff to provide the tube feedings.

47.     During this time Dr. Talabi told Mr. Wallace that he did not need to be hospitalized despite Mr. Wallace requesting at least 7 or more times that he be taken to the hospital because of his deteriorating health. Mr. Wallace informed Dr. Talabi that he was not being fed.

48.     Dr. Talabi was responsible for Mr. Wallace missing necessary clinical visits at the hospital that were part of his continuing care for his medical issues due to refusing to permit Mr. Wallace to be transported to them. These refusals caused delay in his obtaining surgical treatment to repair his severed esophagus.

49.     After repeated complaints regarding the failure and refusal of ACJ medical staff to provide him with his tube feedings were ignored, Mr. Wallace was rushed back to UPMC Mercy after he lost consciousness in the ACJ infirmary.

50.     Mr. Wallace was re-admitted to UPMC Mercy on March 2, 2015. His diagnoses included interstitial emphysema, severe malnutrition, acute kidney failure, cachexia, severely underweight, anemia, depressive disorder, hypothyroidism, deep venous thrombosis, hypoglycemia, and hypothermia.

51.     UPMC medical records indicate that Mr. Wallace was suffering from "Severe protein-calorie malnutrition [consistent with] *starvation*." (emphasis added). His condition was further described as "emaciated."

52.     Mr. Wallace suffered extreme pain and bodily injury due to ACJ's refusal to comply with his medically prescribed tube feedings, including injury to his kidneys, heart, and circulatory system.

53.     In addition, Mr. Wallace suffered extreme psychological and emotional trauma, including severe anxiety, repeated panic attacks in the subsequent weeks and months, chronic depression, loss of motivation, and recurring fear that he would suffer the same injury or even death during his confinement at ACJ.

54.     Mr. Wallace was discharged from UPMC Mercy on March 9, 2015, and returned to ACJ. The discharge patient instructions again prescribed that Mr. Wallace was to receive five (5) tube feedings per day and these instructions were known to all individuals entrusted with Mr. Wallace's care.

*Return to ACJ, Continued Starvation and Heart Attack*

*(March 9, 2015 to March 15, 2015)*

55.     Upon Mr. Wallace's return to ACJ from UPMC Mercy on March 9, 2015, ACJ medical staff continued their deliberate indifference towards his medical needs and their pattern of neglect. Despite being hospitalized due to severe malnutrition and appearing starved and emaciated, ACJ continued to not follow the medically necessary orders provided by UPMC Mercy.

56.     In fact, Mr. Wallace was fed even less upon his March 9th return than he had been prior to his March 2nd hospitalization. On some days he was not provided any tube feedings, and on others he received less than half of what he was prescribed.

57.     Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager all were aware of Mr. Wallace's serious medical need for tube feedings. A week prior to his March 9th return to ACJ he had to be rushed from the infirmary to the hospital due to severe malnutrition and related health problems caused by his not receiving necessary tube feedings at ACJ. Each of them had the ability and the responsibility to provide feedings.

58.     Mr. Wallace complained to these nurses about his need for tube feedings. His complaints were ignored and no measures were taken to ensure that he was provided with his medically prescribed tube feedings.

59.     Dr. Talabi was again made aware that staff were not providing Mr. Wallace with his medically prescribed feedings, yet she took no measures to intervene to ensure that Mr. Wallace was adequately fed.

60.     Social Worker Jane Doe was again made aware that staff were not providing Mr. Wallace with his medically prescribed feedings, yet she took no measures to intervene to ensure that Mr. Wallace was adequately fed despite her representations to the staff at UPMC that Corizon and the Allegheny County Jail were adequately equipped to care for Mr. Wallace.

61.     There are no records that Mr. Wallace was provided any tube feedings during this period.

62.     Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager, as trained nursing staff, were all aware of the risks of dehydration, malnourishment, starvation, and related health problems up to and including death that will result when a person's nutritional intake is severely diminished. They were all specifically aware of Mr. Wallace's risk for these and other conditions due to his recent hospitalization and it is believed and therefore alleged that they were also aware of his needs due to internal meetings regarding his improper treatment.

63.     Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager, as trained nursing staff, were all aware that a patient faces grave and imminent health risks, including risks of permanent damage and/or death, when that patient receives less than half of his daily medically prescribed nutritional intake.

64.     Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager, as trained nursing staff, were all aware that Mr. Wallace was not able to eat via conventional means due to the severing of his esophagus.

65.     Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager, as trained nursing staff, were all aware that Mr. Wallace did not have access to his tube feedings and relied on them and other medical staff to provide the tube feedings.

66.     Even laypersons without medical training recognize that the standard of care provided to Mr. Wallace and the failure of staff at ACJ to provide him with his basic nutritional requirements could result in severe health problems, risk of permanent injury or death.

67.     Mr. Wallace complained to medical staff but his complaints were ignored.

68.     Less than one week from his March 9th return, Mr. Wallace had to be rushed back to UPMC Mercy in an ambulance, this time suffering a heart attack as a result of the ACJ medical staff and their deliberate indifference to his serious medical needs.

69.     On March 15, 2015, Mr. Wallace was again admitted to UPMC Mercy for the third time due to ACJ medical staff, including Dr. Talabi, Nurses Ryan Heintzenrater, Michelle Dranko, Logan Berger, and Juliann Rager, failing to provide him with his medically prescribed feeding tubes.

70.     Mr. Wallace's cardiac arrest was the result of severe malnutrition caused by the starvation inflicted by ACJ medical staff.

71.     Mr. Wallace was diagnosed with, among other things, severe malnutrition, cardiac arrest, being severely underweight, cardiac dysrhythmias, dehydration, thrombocytopenia, tricuspid valve disease, depressive disorder, acute respiratory failure, and deep venous thrombosis.

72.     Mr. Wallace suffered extreme pain and bodily injury due to ACJ's refusal to comply with his medically prescribed tube feedings, including injuries caused by severe malnutrition and dehydration, suffering a heart attack at age 28, as well as harm to his respiratory and circulatory system.

73.     In addition, Mr. Wallace suffered extreme psychological and emotional trauma, including severe anxiety, repeated panic attacks in the subsequent weeks and months, chronic depression, loss of motivation, and recurring fear that he would suffer the same injury or even death during his confinement at ACJ.

74.     Following his heart attack, Mr. Wallace spent 19 days at UPMC Mercy before his return to ACJ.

75.     UPMC Mercy medical personnel had several meetings with ACJ treatment personnel, officials and Social Worker Jane Doe prior to releasing Mr. Wallace. UPMC Mercy medical personnel did not release Mr. Wallace to ACJ until they felt ACJ was going to provide him with the necessary tube feedings and other medical care.

76.     Mr. Wallace was provided with his medically prescribed tube feedings upon his return to ACJ on April 3, 2015 until his release from custody on May 30, 2015.

77.     Mr. Wallace continues to suffer from the ongoing effects of the starvation, hospitalization, and cardiac arrest he experienced due to defendants' acts and omissions. These effects include rapid heartbeat, depression, anxiety, and fear of future incarceration.

78.     As the direct, proximate, and factual result of the conduct of the defendants, the Plaintiff, Christopher Wallace, has suffered the following damages and injuries:

a)  Plaintiff has suffered a heart attack, depressive disorder, starvation, dehydration, severe malnutrition, cardiac dysrhythmias, deep venous thrombosis, acute respiratory failure, tricuspid valve disease;

b)  plaintiff's health and mobility may be permanently impaired;

c)  he has unnecessarily endured great pain, suffering, inconvenience, embarrassment, mental anguish, emotional and psychological trauma;

d)  he may be required in the future to incur expenses for medical treatment and care, medical supplies, rehabilitation treatment, medicines and other attendant services;

e)  he may sustain a loss in earning capacity;

f)  his general health, strength and vitality have been impaired;

g)  he has been and may in the future be unable to enjoy the various pleasures of life;

h)  he has in the past, and may continue in the future, to experience severe pain and suffering; and

i)  he has been required, and may continue in the future, to treat with various medical providers, physicians, surgeons and physical therapists.

*County Controller's 2015 Audit of ACJ Medical Care – Policies and Practices Responsible for Constitutional Violations*

79.     In addition to the deliberate indifference of medical staff, the severe and nearly-fatal injuries Plaintiff suffered were the result of systemic deficiencies in the provision of medical care at

ACJ during this time that were caused by policies and practices that ACJ, Corizon, and Allegheny County officials knew were resulting in constitutional violations.

80.     Defendants Allegheny County, Corizon Health, Inc., County Executive Rich Fitzgerald, and Warden Orlando Harper all had knowledge of and acquiesced in policies and practices resulting in violations of ACJ inmates' rights to receive medical care.

81.     County Executive Fitzgerald, who has executive authority over ACJ, had been repeatedly contacted about health care issues at ACJ by other government officials in the months leading up to Mr. Wallace's incarceration. He took no action to remedy the situation.

82.     Warden Harper received reports from staff and inmates constantly about health care inadequacies. He took no action to remedy the situation either.

83.     Corizon, as the entity responsible for providing health care at ACJ, was fully aware of the systemic deficiencies in its health care services and the policies and practices that caused them. Corizon took no action to remedy the situation.

84.     The policies and practices at issue were summarized in a December 2014 audit of the contract between Corizon Health, Inc. and Allegheny County conducted by Allegheny County Controller Chelsa Wagner. The report was provided to defendants Fitzgerald, Harper, and Corizon. *See* Exhibit A attached to this complaint, Examination Report on Corizon Health, Inc.'s Compliance with Contract #153946 with Allegheny County for the Period September 1, 2013 through February 28, 2014.

85.     The audit identifies fourteen (14) findings demonstrating that Corizon and ACJ were in non-compliance with their contractual obligations. These findings included several that directly led to the injuries suffered by Mr. Wallace, including: insufficient monitoring of the contract by ACJ; ACJ's failure to maintain accreditation with the *National Commission on Correctional Health Care*; Corizon's failure to maintain required staffing levels; Corizon's failure to maintain complete and

accurate inmate medical records; Corizon's failure to begin implementing use of electronic medical records as required; Corizon's failure to ensure readiness of emergency equipment and supplies; Corizon did not have a triage process for prioritizing treatment; Corizon failed to respond to inmate medical grievances in a timely fashion; Corizon failed to log oral complaints of inmates pertaining to medical care. Additionally, Corizon affirmatively sought to restrict hospitalization even when such was medically necessary.

86.     Under the contract between ACJ and Corizon, Warden Harper was the official tasked with oversight and monitoring of the contract. His failure to do so enabled Corizon to breach its obligations to provide constitutionally adequate care.

87.     Despite the widespread deficiencies revealed by the audit, defendants Fitzgerald, Harper, and Corizon did not take affirmative steps to remedy the problems related to staffing, inadequate record-keeping, untimely response to grievances, or others findings identified above and in the audit.

88.     Mr. Wallace's starvation, heart attack, and hospitalizations were directly related to the disorganized, dysfunctional, and deficient system of health care at ACJ.

89.     The failure to maintain required levels of medical staffing resulted in situations where patients were not provided with medically necessary or prescribed treatment, including the failure to provide Mr. Wallace's tube feedings.

90.     The failure to maintain complete and accurate inmate records and implement an electronic medical records system made it impossible to track whether medical prescriptions, including Mr. Wallace's tube feedings, had been provided.

91.     The failure to develop and implement an effective triage system for treating the sickest patients meant that Mr. Wallace's need for tube feedings was not properly prioritized and was therefore ignored, resulting in his not receiving his medically necessary tube feedings.

92.     The failure to respond in a timely fashion to complaints about inadequate medical care meant that serious medical issues, including Mr. Wallace being deprived his tube feedings, were ignored.

93.     These policies and practices were clearly identified in the December 2014 audit, and defendants Fitzgerald, Harper, Allegheny County, and Corizon deliberately refused to remedy the problems, resulting in Mr. Wallace's injuries due to his being starved via deprivation of medically necessary tube feedings.

**Causes of Action**

**COUNT I – Deliberate Indifference to Serious Medical Needs of a Pretrial Detainee in Violation of the Due Process Clause Fourteenth Amendment to the U.S. Constitution – Against All Defendants**

94. Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs 1 to 93 of this Complaint as if fully set forth herein.

95. At all times material hereto, the Defendant Allegheny County was responsible for the operations and policies of the Allegheny County Jail in all material respects and for the conduct of their contractor, Corizon. The County was also responsible for monitoring Corizon's compliance with all contracts between the County and Corizon.

96. At all times material hereto, Defendant Corizon Health Inc. was responsible for the development and/or promulgation of appropriate policies and practices for the medical care of inmates and to provide for the medical care and well-being of all inmates in Allegheny County Jail as well as their implementation.

97. At all times material hereto, Dr. Abimbola Talabi was responsible for ensuring that proper medical treatment was provided to inmates under her care and for supervising all other medical staff.

98. At all times material hereto, Social Worker Jane Doe was responsible for ensuring that proper medical treatment was provided to inmates under her care and for making sure that ACJ medical staff were complying with the instructions she received from UPMC staff.

99. At all times material hereto, Nurse Ryan Heitzenrater was responsible for ensuring that proper medical treatment was provided to inmates under his care.

100. At all times material hereto, Nurse Michelle Dranko was responsible for ensuring that proper medical treatment was provided to inmates under her care.

101. At all times material hereto, Nurse Logan Berger was responsible for ensuring that proper medical treatment was provided to inmates under his care.

102. At all times material hereto, Nurse Juliann Rager was responsible for ensuring that proper medical treatment was provided to inmates under her care.

103. At all times material hereto, County Executive Rich Fitzgerald was responsible for ensuring the well-being of inmates under the care and custody of ACJ, ensuring that other jail employees were dutifully performing their duties, and ensuring that Corizon complied with all applicable contracts with the County.

104. At all times material hereto, Warden Orlando Harper was responsible for ensuring the well-being of inmates under his care and ensuring that other jail employees were dutifully performing their jobs.

105. Defendants Allegheny County and Corizon were deliberately indifferent to the rights and serious medical needs of Plaintiff by failing to properly implement or execute policies or procedures ensuring that inmates received proper medical care. Allegheny County's own Corizon Report shows that both the County and Corizon have displayed a pattern and practice of such failures and that the cruel and unusual torment Plaintiff endured could have been averted with a change in policy or adherence to procedures that may have been in place.

106.     Defendant's Allegheny County and Corizon are also directly, proximately and vicariously liable by failing to properly train, review, assign, oversee, supervise, manage, discipline or control all other listed defendants and have exhibited a pattern and practice of such behavior.

107.     All defendants, through their deliberate indifference to Mr. Wallace's serious need for medical care and appropriate accommodations, caused him to suffer physical pain and emotional distress to an unconscionable degree well in excess of that which normally attends incarceration.

108.     It is believed and therefore averred that all defendants were personally involved in the formation of Corizon and Allegheny County Jail policies and practices and as such they contributed to the pattern and practice of denying inmates medical care.

109.     Defendant Talabi and the listed Nurse defendants and Social Worker Jane Doe were deliberately indifferent in the following manner:

    a.   failing to properly read, view and/or interpret Plaintiff's medical records;

    b.   by improperly assessing Plaintiff's medical needs and remaining indifferent to his need for urgent medical care;

    c.   in failing to provide tube feedings to Plaintiff;

    d.   in failing to send Plaintiff to the hospital when his need for care was obvious;

    e.   in failing to permit Plaintiff to go to the hospital for clinical visits that were necessary for his continuing care for his medical issues;

    f.   in failing to closely monitor Plaintiff's health;

    g.   in failing to properly examine Plaintiff or listen to his requests for proper feeding and care;

h. in failing to timely, properly, and/or adequately recommend or administer appropriate medications to Plaintiff under the circumstances;

i. failing to properly conform to accepted standards of medical practice in the diagnosis, treatment and medical management of Plaintiff;

j. failing to possess and/or exercise adequate medical skills, knowledge, experience and techniques for the proper treatment of Plaintiff; and

k. in failing to timely, properly and/or adequately communicate with others regarding Mr. Wallace's examinations, medical test results and plan of car.

l. Dr. Talabi failed to supervise medical staff in their care of Mr. Wallace.

110. Allegheny County was deliberately indifferent in the following manner:

a. in failing to adopt, maintain or follow policies or practices with regard to diagnosing, assessing, treating or providing for the medical care of inmates at Allegheny County Jail such as Mr. Wallace;

b. in failing to hire, supervise, and/or maintain competent corrections officers and medical staff;

c. in failing to timely, properly and/or adequately monitor the availability and competency of the members of its medical staff and prison staff and the adequacy of their inmate care and treatment;

d. in failing to investigate whether their employees and agents were complying with applicable policies and customs and/or violating inmate's constitutional rights;

e. in failing to timely, properly and/or adequately have in place medical review procedures or medical request follow-up procedures so that they could obtain knowledge regarding the performance of their officers, employees, doctors, nurses,

physician assistants and healthcare personnel regarding the quality of their patient care, their availability, and their compliance with prison policies and procedures;

f.   in failing to provide adequate medical staff for the number of inmates at Allegheny County Jail;

g.   systemically, regularly and continuously delaying and allowing the delay of the proper treatment of Plaintiff's condition, which should have been obvious to defendant;

h.   in failing to keep proper inmate records and grievance records related to Plaintiff;

i.   in failing to properly follow up with Plaintiff in light of his repeated medical requests, symptoms and complaints;

j.   in failing to give significance to the findings and/or diagnoses of others involved in Plaintiff's care and treatment;

k.   in failing to ensure and maintain a continuity of care and communication between health care professionals and their respective staffs with respect to Mr. Wallace and his medical condition.;

l.   in engaging in a pattern and practice of denying inmates medical care; and

m.   in failing to hold employees and contractors accountable for inmate care under established treatment policies and protocols.

111.   Corizon was deliberately indifferent in the following manner:

a.   in failing to adopt, maintain, or follow policies or practices with regard to diagnosing, assessing, treating or providing for the medical care of inmates at Allegheny County Jail such as Mr. Wallace;

b.   in failing to hire, supervise, and/or maintain competent medical staff;

c.  in failing to timely, properly and/or adequately monitor the availability and competency of the members of its medical staff and the adequacy of their inmate care and treatment;

d.  in failing to investigate whether their employees and agents were complying with applicable policies and customs and/or violating inmate's constitutional rights;

e.  in failing to timely, properly and/or adequately have in place medical review procedures or medical request follow-up procedures so that they could obtain knowledge regarding the performance of their employees, doctors, nurses, physician assistants and healthcare personnel regarding the quality of their patient care, their availability, and their compliance with prison policies and procedures;

f.  in failing to provide or request adequate medical staff for the number of inmates at Allegheny County Jail;

g.  systemically, regularly and continuously delaying the proper treatment of Plaintiff's condition, which should have been obvious to defendant;

h.  in failing to properly follow up with Plaintiff in light of his repeated medical requests, symptoms and complaints;

i.  in failing to keep accurate and detailed medical records;

j.  in failing to give significance to the findings and/or diagnoses of others involved in Plaintiff's care and treatment;

k.  in failing to ensure and maintain a continuity of care and communication between health care professionals and their respective staffs with respect to Mr. Wallace and his medical condition.

112.    Defendants Rich Fitzgerald and Orlando Harper were deliberately indifferent in the following manner:

a.  defendants Firzgerald and Harper were repeatedly notified of substandard, deficient, and/or non-existent medical care at Allegheny County Jail prior to and during the time that Plaintiff was incarcerated there, including their being put on notice of the systemic deficiencies in medical care at the jail by the County Controller, and both defendants Fitzgerald and Harper failed to take measures to address the policies and practices responsible for prisoners' being deprived of their right to medical care;

b.  defendants Fitzgerald and Harper refused to exercise any oversight over the contract with Corizon despite repeated warnings and reports that its terms were not being met and that the failures of Corizon were resulting in pain, suffering, and death;

c.  defendants Fitzgerald and Harper had knowledge that Corizon was denying and delaying hospitalizing prisoners in order to save money, and both of them acquiesced in this practice;

d.  defendants Fitzgerald and Harper had knowledge that Corizon was not hiring sufficient numbers of medical staff to meet the medical needs of the population at the Allegheny County Jail, and both of them acquiesced in this practice;

e.  defendants Fitzgerald and Harper had knowledge that Corizon was routinely and systematically depriving prisoners of prescription medications and necessary medical treatments, and both of them acquiesced in these practices;

f.  the policies and practices of Corizon that defendants Fitzgerald and Harper enabled and authorized through their knowledge of and acquiescence in these policies and practices resulted in the exposure of Plaintiff to an excessive risk to his health and serious medical injury.

113.    As the direct, proximate, and factual result of the conduct of the defendants, the Plaintiff, Christopher Wallace, has suffered the following damages and injuries:

a. Plaintiff has suffered a heart attack, depressive disorder, starvation, dehydration, severe malnutrition, cardiac dysrhythmias, deep venous thrombosis, acute respiratory failure, tricuspid valve disease;

b. Plaintiff's health and mobility may be permanently impaired;

c. he has unnecessarily endured great pain, suffering, inconvenience, embarrassment, mental anguish, emotional and psychological trauma;

d. he may be required in the future to incur expenses for medical treatment and care, medical supplies, rehabilitation treatment, medicines and other attendant services;

e. he may sustain a loss in earning capacity;

f. his general health, strength and vitality have been impaired;

g. he has been and may in the future be unable to enjoy the various pleasures of life;

h. he has in the past, and may continue in the future, to experience severe pain and suffering; and

i. he has been required, and may continue in the future, to treat with various medical providers, physicians, surgeons and physical therapists.

### COUNT II – Medical Malpractice Claims – Against Defendants Corizon, Inc., Talabi, Heitzenrater, Berger, Dranko, and Rager

114.     Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs 1 to 93 of this Complaint as if fully set forth herein.

115.     Defendant Talabi and the listed Nurse defendants committed medical malpractice in violation of Pennsylvania state law when they breached their duty to Plaintiff by deviating from the professional standard of care in the following ways:

a. failing to properly read, view and/or interpret Plaintiff's medical records;

b. by improperly assessing Plaintiff's medical needs and remaining indifferent to his need for urgent medical care;

c. in failing to send Plaintiff to the hospital when his need for care was obvious;

d. in failing to closely monitor Plaintiff's health;

e.  in failing to provide tube feedings to Plaintiff;

f.  in failing to properly examine Plaintiff or listen to his requests for proper feeding and care;

g.  in failing to timely, properly, and/or adequately recommend or administer appropriate medications to Plaintiff under the circumstances;

h.  failing to properly conform to accepted standards of medical practice in the diagnosis, treatment and medical management of Plaintiff;

i.  failing to possess and/or exercise adequate medical skills, knowledge, experience and techniques for the proper treatment of Plaintiff; and

j.  in failing to timely, properly and/or adequately communicate with others regarding Mr. Wallace's examinations, medical test results and plan of care.

116.  Corizon committed medical malpractice in violation of Pennsylvania state law when they breached their duty to Plaintiff by deviating from the professional standard of care in the following ways:

a.  in failing to adopt, maintain or follow policies or practices with regard to diagnosing, assessing, treating or providing for the medical care of inmates at Allegheny County Jail such as Mr. Wallace;

b.  in failing to hire, supervise, and/or maintain competent medical staff;

c.  in failing to timely, properly and/or adequately monitor the availability and competency of the members of its medical staff and the adequacy of their inmate care and treatment;

d.  in failing to hire sufficient numbers of medical staff to meet the health needs of those incarcerated at the Allegheny County Jail, including Plaintiff;

e.   in failing to investigate whether their employees and agents were complying with applicable policies and customs and/or violating inmate's constitutional rights;

f.   in failing to timely, properly and/or adequately have in place medical review procedures or medical request follow-up procedures so that they could obtain knowledge regarding the performance of their employees, doctors, nurses, physician assistants and healthcare personnel regarding the quality of their patient care, their availability, and their compliance with prison policies and procedures;

g.   in failing to provide or request adequate medical staff for the number of inmates at Allegheny County Jail;

h.   systemically, regularly and continuously delaying the proper treatment of Plaintiff's condition, which should have been obvious to defendant;

i.   in failing to properly follow up with Plaintiff in light of his repeated medical requests, symptoms and complaints;

j.   in failing to keep accurate and detailed medical records;

k.   in failing to give significance to the findings and/or diagnoses of others involved in Plaintiff's care and treatment;

l.   in failing to ensure and maintain a continuity of care and communication between health care professionals and their respective staffs with respect to Mr. Wallace and his medical condition.

**Prayer for Relief**

WHEREFORE, Plaintiffs request that the Court grant the following relief:

A.      Award compensatory and punitive damages;

B.      Grant attorneys' fees and costs;

C.      Such other relief as the Court deems just and proper.


## JURY DEMAND

Plaintiff requests a trial by jury with respect to all matters and issues properly triable by a jury.


DATED: October 12, 2016

/s/ Bret D. Grote
Bret D. Grote
PA I.D. No. 317273
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA  15221
Telephone:  (412) 654-9070
bretgrote@abolitionistlawcenter.org


/s/ Louis Kroeck
Louis Kroeck
PA I.D. No. 210045
lkroeck@ambylaw.com
Anstadig & McDyer
1300 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219-1911
Telephone: (412) 765-3700
Fax: (412) 765-3730