IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER WALLACE, ) | CIVIL DIVISION |
| ) | |
| Plaintiff, ) | No. 2:16-cv-01565-LPL |
| ) | |
| v. ) | |
| ) | |
| RICH FITZGERALD, County Executive; ) | |
| ALLEGHENY COUNTY; ORLANDO ) | |
| HARPER, Warden of Allegheny County ) | |
| Jail; CORIZON HEALTH, INC.; DOCTOR ) | |
| ABIMBOLA TALABI; NURSE RYAN ) | |
| HEITZENRATER; NURSE MICHELLE ) | |
| DRANKO; NURSE LOGAN BERGER; ) | |
| NURSE JULIANN RAGER; LESLIE ) | |
| TRAVIS, Director of Nursing, ) | |
| ) | |
| Defendants. ) | |

## **CORIZON DEFENDANTS' STATEMENT REGARDING SUMMARY JUDGMENT**

Corizon Health, Inc., Ryan Heitzenrater, Logan Berger, Juliann Rager, Michelle Dranko and Lesli Travis (collectively the "Corizon Defendants") submit the within Statement pursuant to the Text Order of November 22, 2017 at ECF No. 58.

These defendants intend to move for partial summary judgment as to Count I of the First Amended Complaint claiming deliberate indifference. Per the record developed during discovery, on October 31, 2013, Mr. Wallace was shot 14 times during which his esophagus was severed and as part of the surgical repair was isolated at the top and bottom meaning any nutritional intake through his mouth would not reach his stomach. He obtained hydration and nutrition through a feeding tube. The plan was for the esophagus to eventually be reattached at the top and bottom but as of February 11, 2015, that procedure had not yet been done.

2749539

On February 11, 2015, Mr. Wallace arrived at the Allegheny County Jail ("ACJ") and through intake was identified by Nurse Logan Berger as being too frail to be at the jail so was immediately transferred to UPMC Mercy. Prior to his arrival at the ACJ, Mr. Wallace was responsible for his own tube feedings but because of an issue with his health insurance, lacked the money to pay for his feedings and through January and February 2015 became severely malnourished leading to his frail state. While records at UPMC Mercy indicate his weight was 77 pounds, all parties believe that is an error and his weight was more likely 110 pounds. The hospital decided how many calories he required for maintenance of weight and determined 1950 calories a day was sufficient. Mr. Wallace was discharged back to ACJ on February 16, 2015. His discharge diagnosis included cardiomyopathy, which was preexisting and not something new that developed during his confinement. Shortly upon his return to ACJ, he was referred for mental health screening by Nurse Ryan Heitzenrater because Mr. Wallace seemed depressed.

Mr. Wallace was at ACJ from February 16 through March 2, 2015 when he was sent back to UPMC Mercy hypothermic, hypotensive and appearing confused. He was released back to ACJ on March 9 with a recommended input from UPMC Mercy of 1860 calories. He was sent back to UPMC Mercy on March 15 where he remained until April 3, 2015. Plaintiff claims a heart attack on March 15th but records indicate no heart attack rather cardiac arrhythmia. Per the Complaints, the allegations are limited to what happened in February and March 2015. In this time period, Mr. Wallace was at the ACJ for 19 full days and 6 partial days.

Prior to February 2015, Mr. Wallace had stayed at the ACJ and submitted health needs requests. He knew the system including how to submit a grievance. In February and May 2015, he submitted no health request forms or grievances complaining of not receiving his feedings.

2749539

The medical records and deposition testimony reveal jail clinical staff used UPMC Mercy repeatedly with no reluctance. Plaintiff's theory is he did not receive enough feedings during the days he was at ACJ. He told UPMC Mercy he was receiving two feedings a day at ACJ and there are repeated references in the records to tube feedings. Deposition testimony from the nurses revealed Mr. Wallace was responsible for his own tube feedings much like he had been on the outside and the nurses made repeated attempts to coax him into accepting his feedings and tried to work with him. Where supplies were not immediately available, they could be ordered from a 24 hour pharmacy and substitutions were made to help Mr. Wallace. Recordings of Mr. Wallace's telephone calls made from ACJ reveal him acknowledging on February 20th, he's put on 11 pounds and telling his sister he gets what he needs and has been receiving his feedings; on February 21st telling his girlfriend he gets his feedings every night and that everything is in his cell, including his feedings; on February 22nd acknowledges to his girlfriend they are feeding him; on February 23rd, telling his girlfriend he is receiving his tube feedings; on March 1st, tells his dad he is gaining weight.

The law is well settled regarding the standard for deliberate indifference. Plaintiff must establish personal involvement of each individual defendant and how each was deliberately indifferent. The records and deposition testimony especially when paired with the telephone recordings support no finding of deliberate indifference.

2749539

Respectfully submitted,

MEYER UNKOVIC & SCOTT, LLP


/s/ *Kathryn M. Kenyon*
Kathryn M. Kenyon, Esquire
PA ID. # 82262
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222

*Counsel for Corizon Health, Inc., Ryan Heitzenrater, Logan Berger, Michelle Dranko, Juliann Rager, Lesli Travis*

2749539

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2018 a true and correct copy of the foregoing **CORIZON DEFENDANTS' STATEMENT REGARDING SUMMARY JUDGMENT** was filed electronically. Parties may access this filing through the Court's ECF/PACER system.

MEYER UNKOVIC & SCOTT, LLP

*/s/ Kathryn M. Kenyon*
Kathryn M. Kenyon, Esquire